McKinney, J.,
delivered the opinion of the Court.
Bill to inforce a Mechanics’ Lien: decree for the complainants, and an appeal to this Court.
In 1856 the complainants (who are brickmasons) built a mill-house for McReynolds & Co., in Clarksville. The work was completed in the Fall of 1856, except filling what are called the pudlock holes, and painting the walls, and during the same Fall, McReynolds & Co. took possession of, and commenced using the building.
In the Spring of 1858, McReynolds & Co. mortgaged said property, to secure money advanced to them by others: and in August, 1858, they failed, and thereupon, *527 Ibey made an assignment of all tlieir property, including said mill-house and appurtenances, for the benefit of their creditors. During the year 1858, said mill property was sold under the mortgage or deed of trust, and was purchased by the defendant, Perdue.
In the Pali of 1858, (but not until alfter the sale, and purchase of the property by Perdue,) the complainant caused the pudloclc holes to be stopped, and part of the walls to be painted; and again in the Spring of .1859, they caused another portion of the walls to be painted, and’ a portion of the walls still remain unpainted.
The amount due to complainants, seems to be near-$2,000. There is pooof in the record, of brickmasons, who stated that a building is not regarded by workmen as finished, until- the pudlock holes are filled up, and the walls penciled. It is also proved by McReynolds, who was examined by complainants, that after McReynolds & Co. went into possession of the property, they applied to complainants to finish the house; and they agreed to do so, but said they had not time then, but would do so, when they could get time. But little importance is to be attached to the testimony of McReynolds. His conduct, in first attempting, either to destroy the lien of complainants, or else to practice a fraud on his creditors, for whose security he conveyed the property, places him in a suspicious attitude.
Upon the foregoing facts, we feel constrained to reverse the decree. From the whole record, we are led to the conclusion, that the contract was regarded by both parties, as complete, and the work finished, in the Fall of 1856, when McReynolds & Co. took possession of the house. And that the trifling work done in the Fall of *528 1858, and Spring of 1859, was an after thought, to give color to the lien set up in the bill.
If it were to be conceded in this case, that as, between the complainants and McReynolds & Co., the work might be considered as not finished, until the walls were penciled, and the pudlock holes stopped, it by no means follows, that it might be so regarded as between the complainants and creditors, or purchasers from McReynolds & Co. Prom the fact that the property had been taken possession' of in the Pall of 1856, by McReynolds & Go., and that the complainants then gave it up, and ceased to do any more work upon it, for a period of more than twelve months, the limitation of the lien, the creditors of McReynolds & Co., and purchasers from them, and the public at- large, might well conclude, that the contract had been completed, and the work finished, for both parties to the contract had so treated it.
And in this view, the complainants are estopped as against creditors, and bona fide purchasers, to say that the work was not finished in the Pall of 1856.
This lien is a peculiar one, essentially different from most other liens known to the law, and must be taken strictly. In many cases, it is not of record, and rests upon a mere verbal agreement, and the time when it takes effect is often doubtful, and dependent on parol evidence.
The limitation prescribed by the Statute, is intended for the benefit of the creditors of the owners of the property, and purchasers from them, to protect them from fraud and injury, by the operation of this secret lien.
Good faith on the part of the mechanic seeking to ’avail himself of the lien, is requisite; and it is incum *529 bent upon him to make out a cage clearly within the provisions of the Satute.
Without undertaking to specify cases in which the continuance of the lien would not be affected by necessary delays in the completion of. material parts of the work contracted to be performed, we are of opinion, that, where the contract is entire;. and the building is substantially finished, and is treated by all the parties, as completed, though something unimportant, or not of the essence of the contract, may remain undone, if the time limited by the Statute is suffered to elapse, before these non-essential things are done, and more especially if intervening rights have attached in favor of third persons, in the meantime, the lien cannot be successfully asserted.
But, in another .aspect of the case, the bill must fail. .If the penciling the walls were an essential part of the contract, without which it was not complete, or the work finished, then it would necessarily result, that the bill was prematurely filed, for in point of fact, the penciling of the walls has never yet been finished, .and leaving a part unfinished, by the fault of the complainants themselves, is as fatal as if the whole had been left undone.
Decree reversed, and bill dismissed.